# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **DEBBIE L. FIERRO NADEAU,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No.: 5:08-CV-1981-VEH** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner,** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff, Debbie L. Fierro Nadeau ("Ms. Nadeau"), brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g). She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied her application for Disability Insurance Benefits ("DIB"). Ms. Nadeau timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, the case is ripe for review under 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g).

## FACTUAL AND PROCEDURAL HISTORY

Ms. Nadeau was a 47-year old female at the time of her hearing before the Administrative Law Judge (hereinafter "ALJ"). (Tr. 34). She has a 12th grade education. (Tr. 34). Her past work experiences include employment as an advertising manager and a retail sales clerk. (Tr. 68). Her last period of work ended in July 2004. (Tr. 15). Ms. Nadeau claims she became disabled on July 15, 2004, due to a depressive disorder, a psychotic disorder, and a history of alcohol abuse. (Tr. 15).

Ms. Nadeau filed her application for a period of disability and DIB on October 21, 2005. (Tr. 13). The claim was denied by the Commissioner on April 7, 2006. (Tr. 13).

Ms. Nadeau filed a timely written request for a hearing on May 1, 2006. (Tr. 13). The hearing was held on March 26, 2008. (Tr. 13). The ALJ issued an unfavorable decision with regard to Ms. Nadeau's claim on April 18, 2008. (Tr.10-12, 22).

On August 26, 2008, the Appeals Council denied review effectively affirming the ALJ's decision and making it the Commissioner's final decision. (Tr. 1-3). On October 24, 2008, Ms. Nadeau timely filed suit with this Court appealing the Commissioner's final decision. (Pl.'s Br. 2). The court has carefully considered the record and affirms the decision of the ALJ.

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390, 401 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[1] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically

---

[1] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of June 12, 2009.

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4) whether the claimant can perform her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed

impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found that Ms. Nadeau met the insured status requirements of the Social Security Act through September 30, 2007. (Tr. 15). He also ruled that Ms. Nadeau has not engaged in substantial gainful activity since the alleged onset date of her disability on July 15, 2004. (Tr. 15). The ALJ then decided the claimant has a severe combination of impairments including: a depressive disorder, a psychotic disorder, and a history of alcohol abuse. ( Tr. 15). The ALJ determined that Ms. Nadeau, including her substance use, has an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404 , Subpart P, Appendix 1, of the Social Security Regulations. (Tr. 16). The ALJ found specifically that Ms. Nadeau meets listing 12.09 regarding Substance Addiction Disorders. (Tr. 16).

The ALJ concluded that if Ms. Nadeau stopped the substance use, the remaining limitations would cause more than minimal impact on her ability to perform basic work activities; therefore, Ms. Nadeau would continue to have a severe

impairment or combination of impairments. (Tr. 16). The ALJ found that if Ms. Nadeau stopped the substance use, she would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404 , Subpart P, Appendix 1. (Tr. 16). The ALJ determined that if Ms. Nadeau stopped the substance use, she would have the residual functioning capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she would not be able to perform jobs with detailed instructions, but would be able to perform jobs with simple one and two step short instructions, maintaining concentration for at least two hour periods. (Tr. 17).

The ALJ found that, if Ms. Nadeau stopped substance use, she would continue to be unable to perform past relevant work. (Tr. 21). The ALJ then concluded that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Ms. Nadeau is "not disabled," whether or not she has transferable job skills. (Tr. 21). The ALJ also determined that if Ms. Nadeau stopped the substance use, considering her age, education, work experience, and residual capacity, there would be a significant number of jobs in the national economy that Ms. Nadeau could perform. (Tr. 21).

The ALJ finally held that because Ms. Nadeau would not be disabled if she stopped the substance use, her substance use disorder is a contributing factor material

to the determination of disability. Thus, Ms. Nadeau has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision and therefore was not eligible for DIB under §§ 216(i) and 223(d) of the Social Security Act. (Tr. 21, 22).

## ANALYSIS

The court can reverse a finding of the Secretary if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[2] Ms. Nadeau asserts that "there is error in law and fact that mandates a reversal of the Administrative Law Judge's (ALJ) decision and yields a finding of disabled." (Doc. 9 at 13). In its review, this court finds that the ALJ's decision was supported by substantial evidence and that the ALJ applied the correct legal standard.

**I. THE ALJ'S CONCLUSION IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND PROPER WEIGHT WAS GIVEN TO THE MEDICAL OPINION EVIDENCE BEFORE HIM.**

Ms. Nadeau argues that the ALJ abused his discretion in failing to give

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

substantial weight to the opinion of her treating physician, Dr. Yelda, in determining her disability claim. (Pl.'s Initial Br. 13). The Commissioner asserts that substantial evidence supports the ALJ's decision to give little weight to the opinion of Dr. Yelda because Dr. Yelda's opinion is not supported by the treatment Ms. Nadeau received. Furthermore, the Commissioner asserts that Dr. Yelda's opinion that Ms. Nadeau's alcohol abuse was not relevant to her case, was inconsistent with the medical evidence and her subsequent opinion. (Comm. Br. 7).

While "[t]he testimony of a treating physician must ordinarily be given substantial or considerable weight," the ALJ must also "specify what weight is given to [the] opinion and any reason for giving it no weight." *McGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Social Security Ruling (SSR) 96-2p requires controlling weight to be given to a medical opinion from a treating source when (1) that opinion is "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques and (2) that opinion is "not inconsistent" with the other "substantial evidence" in the claimant's case record.

The ALJ specifically stated that little weight was given to the opinion of Dr. Yelda. (Tr. 20). The reason for the minimal weight given to Dr. Yelda's opinion was due to a lack of support based upon other conflicting evidence contained in the administrative record. (Tr. 20).

For example, in May 2006, Dr. Yelda opined Ms. Nadeau's alcohol abuse was not relevant to her case. (Tr. 389). However, there are instances throughout the record that show that when Ms. Nadeau was not using alcohol, her condition improved. (Tr. 182-183, 225-226, 229).[3] For example, Ms. Nadeau went through detox during her stay at Presbyterian Hospital and her "condition on discharge" was "improved." Her prognosis was "good if she follows through with treatment." (Tr. 182-183). Accordingly, Dr. Yelda failed to provide sufficient medical evidence to support her May 2006 opinion that alcohol was not relevant to her case, given the overall context of the record.

Moreover, the ALJ also stated that little weight was given to Dr. Yelda's opinion because she contradicted her 2006 opinion with a subsequent opinion she provided and failed to offer any explanation for the conflict. (Tr. 20). In May 2006, Dr. Yelda opined Ms. Nadeau's alcohol abuse was not relevant to her case. (Tr. 389).[4] However, in December 2007, Dr. Yelda confusingly indicated that drugs

---

[3] Ms. Nadeau, "denies any alcohol or drug abuse for the last 3 months or more." She appeared "very cooperative, friendly , mood anxious, affect appropriate." (Tr. 225). Ms. Nadeau, "reported that she does not do alcohol or drugs and she was able to find a job." "Her attention and concentration have both improved." (Tr. 226). Ms. Nadeau, who "has not had anything to drink for a long time except on social occasions...," "has been handling her affairs very well for a long time" and is making her own decisions. (Tr. 229).

[4] On the 2006 Medical Source Opinion Form (Mental), Dr. Yelda marked "NO," when asked, "Is Drug and/or alcohol use relevant to this case:" Dr. Yelda marked "NO," when asked, "If so please answer the following question: If the drug and/or alcohol use were to stop, would there be any change in the above-stated limitations?"

and/or alcohol use was relevant to Ms. Nadeau's case, but that if Ms. Nadeau's alcohol use were to stop, there would be no change in her limitations. (Tr. 392).[5] Thus, the ALJ properly afforded little weight to Dr. Yelda's medical opinion evidence given her competing views regarding the relevancy of Ms. Nadeau's alcohol use in 2006 versus 2007, and relatedly her failure to articulate any possible reason for such a deviation.

Furthermore, although Dr. Yelda stated that alcohol use was relevant to Ms. Nadeau's condition in 2007, she ambiguously opined, in this same opinion, that there would be no change in Ms. Nadeau's limitations if she were to stop. (Tr. 392). The definition of relevant is: logically connected and tending to prove or disprove a matter in issue; having appreciative probative value. Bryan A. Garner, Black's Law Dictionary 1293 (7th ed. 1999). Therefore, on its face, Dr. Yelda's most recent opinion is internally inconsistent and provided further proof why the ALJ properly discounted any medical source opinion from Dr. Yelda.

Dr. Yelda failed to show consistency with the medical record, her previous opinion, and internally throughout her most recent opinion. Therefore, the ALJ's

---

[5]On the 2007 Medical Source Opinion Form (Mental), Dr. Yelda marked "YES," when asked, "Is Drug and/or alcohol use relevant to this case:" Dr. Yelda marked "NO," when asked, "If so please answer the following question: If the drug and/or alcohol use were to stop, would there be any change in the above-stated limitations?"

conclusion is supported by substantial evidence and proper weight was given to the medical opinion evidence before him.

## II. THE ALJ'S FINDING THAT MS. NADEAU'S SUBSTANCE USE WAS A CONTRIBUTING FACTOR MATERIAL TO THE FINDING OF DISABILITY IS PROPER AND SUPPORTED BY SUBSTANTIAL EVIDENCE.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4) whether the claimant can perform her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment."

In this case the ALJ did find that Ms. Nadeau satisfied steps one and two of the five step analysis. The ALJ specifically found that Ms. Nadeau meets the listing

12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d)) regarding Substance Addiction Disorders. (Tr. 16). "However, an individual shall not be considered to be disabled... if alcoholism or drug addiction would... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(c). Furthermore, section 105 of Public Law 104-121 prohibits the payment of benefits of the Social Security Act to individuals for whom alcoholism is material to the finding of disability. The ALJ properly relied on evidence throughout the record that Ms. Nadeau was using alcohol. (*See*, *e.g.*, Tr. 182, 183, 283, 289-292). Moreover, there are instances throughout the record that show that when Ms. Nadeau was not using alcohol, her condition improved. (Tr. 182-183, 225-226, 229). Because Ms. Nadeau has not met her burden of proving she is disabled absent her substance abuse and the record shows that her condition improved when she sustained from alcohol, the ALJ was proper in finding that Ms. Nadeau's substance abuse is a contributing factor material to the determination of disability and, without alcohol use, she does not have an impairment or combination of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.§ 404.1520(d)).

"If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other

job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

In Ms. Nadeau's case, the ALJ found that if she stopped her alcohol use, Ms. Nadeau would still suffer from limitations that would impact her ability to perform basic work activities, although these impairments would not meet the requirements listed in 20 C.F.R. Part 404, Subpart, Appendix 1. The ALJ determined that Ms. Nadeau was capable of performing work at all exertional levels with simple one and two step short instructions, maintaining concentration for at least two hour periods, but with no detailed instructions. (Tr. 17, 21). This was determined by assessing activities that Ms. Nadeau stated she continued doing throughout her claimed time of disability. For example, Ms. Nadeau testified at the ALJ hearing that she was able to care for her granddaughter almost every weekend. (Tr. 51). Ms. Nadeau has also reported that she independently drives, grocery shops, cleans, cooks, and performs other activities of daily living. (Tr. 47-52, 164-167).

Furthermore, the ALJ asked the vocational expert whether jobs exist in the national economy for a hypothetical individual of Ms. Nadeau's character, and the residual functional capacity if she were to stop using alcohol. The vocational expert testified that the individual would be able to perform occupations such as a ticket

seller, with 4,000 in the regional economy and 780,000 in the national economy; an information clerk, with 3,000 in the regional economy and 50,000 in the national economy; and a cashier, with 4,000 in the regional economy and 140,000 in the national economy.  Therefore, the court finds that the ALJ properly found that Ms. Nadeau's alcohol use was a contributing factor in the determination of disability and his conclusion that she was not disabled is supported by substantial evidence.

## **CONCLUSION**

Based upon the court's evaluation of the evidence in the record and submissions of the parties, the court finds that the commissioner's final decision applies the proper legal standard and is supported by substantial evidence.  The court further finds that the ALJ properly found that Ms. Nadeau's substance use was a contributing factor material to the finding of disability.  Accordingly, the decision of the Commissioner of the Social Security Administration will be affirmed by separate order.

**DONE** this the 16th day of October, 2009.

 

 

**VIRGINIA EMERSON HOPKINS**
United States District Judge